UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **PATRICK CHARLES GERLEMAN** | § | Case No. 22-41821 |
| | § | |
| Debtor | § | Chapter 7 |
| | § | |

| | | |
|---|---|---|
| MUSTAALI CARBAIDWALA | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 23-4022 |
| | § | |
| PATRICK CHARLES GERLEMAN | § | |
| | § | |
| Defendant | § | |

## <u>MEMORANDUM OF DECISION</u>

On this date the Court considered "Plaintiff's Motion for Summary Judgment" (the "Motion") filed by Mustaali Carbaidwala ("Plaintiff") on January 19, 2024, together with the related objection and reply. Plaintiff asks this Court to enter summary judgment that a judgment debt owed by Patrick Gerleman ("Defendant" or "Debtor") is nondischargeable under the actual fraud component of 11 U.S.C. § 523(a)(2)(A) and for willful and malicious injury under 11 U.S.C. § 523(a)(6). After consideration of the pleadings, proper summary judgment evidence, and the relevant legal authorities the Court

1

concludes that genuine issues of material fact remain. For the reasons explained in this memorandum, Plaintiff's Motion is **DENIED**.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This Court has authority to enter final orders in this adversary proceeding because it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (J), and meets all constitutional standards for the proper exercise of full judicial power by this Court.

## II. Facts and Procedure

Plaintiff, Mustaali Carbaidwala resides in Illinois. Defendant, Patrick Gerleman resides in Frisco, Texas. FXB Dallas, LLC ("FXB") previously owned and operated two fitness gyms named "Farrell's Extreme Bodyshaping" in Frisco, Texas and Little Elm, Texas.[1]

FXB Dallas, LLC d/b/a Farell's Extreme Bodyshaping, as seller, and Gerleman Group, Inc. ("GG") as buyer executed an Asset Purchase Agreement (the "APA") dated November 7, 2019.[2] Plaintiff signed the APA for FXB, and Defendant signed for GG as its "Authorized Agent."[3] The APA memorialized a transaction in which FXB would sell

---

[1] Mot., ECF No. 17 at 1 ¶ 1.

[2] Mot., ECF No. 17 at 2 ¶ 1; Mot., Ex. A.

[3] *Id.*

2

its fitness gyms to GG in return for payment of a $350,000.00 purchase price and

assumption of existing lease obligations at both gym locations.[4]  The APA required GG to

reimburse FXB for any amounts collected from FXB by a landlord should GG default on

the assumed lease obligations.[5]  It also required GG to pay FXB's attorney's fees, if any,

resulting from GG's default on the APA.[6]

GG additionally executed a promissory note payable to Plaintiff in the amount of

$200,000.00 (the "Note"), which Note was signed by Defendant as "President" of GG.[7]

The Note required GG to pay three payments to FXB on June 26, 2020, December 26,

2020, and June 26, 2021.[8]  Defendant on November 26, 2019 executed a "Personal

Guaranty of Payment" in which he personally guaranteed payment of the Note (the

"Guaranty").[9]

GG failed to pay rent under the assumed leases in June, July, August, and

September of 2020.[10]  GG failed to make scheduled payments under the Note.[11] GG also

---

[4] Mot., ECF No. 17 at 2 ¶ 1-2; Mot., Ex. A.

[5] Mot., ECF No. 17 at 2 ¶ 2; Mot., Ex. A.

[6] Mot., ECF No. 17 at 3 ¶ 3; Mot., Ex. A.

[7] Mot., ECF No. 17 at 2 ¶ 4; Mot., Ex. A.

[8] Mot., Ex. A.

[9] Mot., ECF No. 17 at 3 ¶ 4; Mot., Ex. A.

[10] Mot., ECF No. 17 at 3 ¶ 6; Compl., ECF No. 1 at 5 ¶ 12; Ans., ECF No. 7 at 2 ¶ 12.

[11] Mot., ECF No. 17 at 4 ¶ 8; Compl., ECF No. 1 at 5 ¶ 14; Ans., ECF No. 7 at 2 ¶ 14.

failed to cure its default under the Note after Plaintiff sent a cure demand.[12]  In July 2020, GG ceased operating the gym in Frisco purchased from FXB.[13]

Plaintiff alleges Defendant formed FXBNorthTexas, LLC ("FXBNT") as a Texas limited liability company on August 5, 2020 to operate a new gym at 1710 FM 423, Ste. 600, Frisco, Texas 75034.[14]  In December 2020, GG ceased operating the gym in Little Elm purchased from FXB.[15]  Plaintiff further alleges that after forming FXBNT, Defendant transferred all fitness equipment purchased from FXB in the APA to FXBNT for the new gym in Frisco.[16]  Defendant denies these allegations.[17]

Plaintiff and FXB thereafter commenced Case No. 471-06038-2020, styled *FXB Dallas, LLC., et. al. v. Gerleman Group, Inc. et. al.,* in the 471st Judicial District Court of Collin County, Texas (the "State Court Case").  In the State Court Case, Plaintiff and FXB sued Defendant, GG, and FXBNT for breach of the APA, Note, and Guaranty, and for fraudulent transfer of assets from GG to FXBNT.[18]  Plaintiff obtained a no answer

---

[12] *Id.*

[13] Mot., ECF No. 17 at 5 ¶ 9.

[14] Mot., ECF No. 17 at 5 ¶ 9.

[15] *Id.*; Mot., Ex. A.

[16] Mot., ECF No. 17 at 5 ¶ 9.

[17] Obj., ECF No. 21 at 4-5 ¶ 7-9.

[18] Mot., ECF No. 17 at 5 ¶ 10; Mot., Ex. B.

4

default judgment against GG and FXBNT.[19]  On September 20, 2021, Plaintiff and

Defendant tried remaining contested claims in a bench trial in the State Court Case.[20]  The

presiding judge awarded Plaintiff a final judgment against Defendant on September 23,

2021 in the amount of $239,520.61 with post-judgment interest at a rate of 5%.[21]  This

final judgment amount was comprised of "economic damages in the sum of Two Hundred

Six Thousand Five Hundred and 00/100 Dollars ($206,500.00), an additional sum of

Twenty-Three Thousand Six Hundred Twenty-Five and 86/100 Dollars ($23,625.86), plus

reasonable and necessary attorneys' fees in the sum of Eight Thousand Five Hundred

Thirty and 00/100 Dollars ($8,530.00), plus costs of court in the amount of Eight

Hundred Sixty-Four and 75/100 Dollars ($864.75)."[22]  Regarding the basis for this award,

the final judgment states:

> "The Defendants are liable to Plaintiffs for violations of the Texas Uniform
> Fraudulent Transfer Act (TUFTA). In addition, Gerleman Group and
> Gerleman are liable to Plaintiffs for breach of contract."[23]

Plaintiff recites that no appeal of the final judgment was filed, which fact does not appear

disputed by Defendant.[24]

---

[19] Mot., ECF No. 17 at 5 ¶ 10; Mot., Ex. C.

[20] Mot., ECF No. 17 at 5 ¶ 11; Mot., Ex. C.

[21] Mot., ECF No 17 at 6 ¶ 11; Mot., Ex. C at 3 ¶ 5.

[22] Mot., Ex. C at 3 ¶ 3.

[23] Mot., Ex. C at 2.

[24] Mot., ECF No 17 at 6 ¶ 12.

On December 30, 2022, Defendant filed his voluntary petition for Chapter 7 bankruptcy together with his original schedules and statements.[25]  On March 28, 2023, Plaintiff commenced this adversary proceeding.[26]  Defendant timely answered.[27]  After the Motion was filed by Plaintiff, Defendant timely responded, and Plaintiff then replied.[28]

### III.  Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catlett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c).  Thus, if summary judgment is appropriate, the Court may resolve the case as a matter of law.

The moving party always bears the initial responsibility of informing the court of the basis for its motion and producing evidence which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  How the necessary summary judgment showing can be made depends upon which party will bear the burden

---

[25] Case No. 22-41821, ECF No. 1.

[26] Compl., ECF No. 1.

[27] Ans., ECF No. 7.

[28] ECF Nos. 17, 21, and 22.

of proof at trial.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077 n.16 (5th Cir. 1994).

"A fact is material only if its resolution would affect the outcome of the action."  *Wiley v.*

*State Farm Fire and Cas, Co.*, 585 F.3d 206, 210 (5th Cir. 2009); *see also Renwick v.*

*PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018).  "All reasonable inferences

must be viewed in the light most favorable" to the nonmoving party, and "any doubt must

resolved in favor of the nonmoving party."  *In re Louisiana Crawfish Producers*, 852

F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986).  An actual controversy of fact exists where both parties

have submitted evidence of contradictory facts. *Olabisiomotosho v. City of Houston*, 185

F.3d 521, 525 (5th Cir. 1999).

Courts may accept the moving party's version of the facts as undisputed.  *Alvarez*

*v. United Parcel Serv. Co.*, 398 F. Supp. 2d 543, 548-49 (N.D. Tex. 2005) (overruled on

other grounds); *cf. F.D.I.C. v. Foxwood Mgmt. Co., No.* 92-2434, 1994 WL 24911, at *6

(5th Cir. Jan. 14, 1994) (citing cases for the proposition that courts can accept the

contents of a conclusory affidavit as true if they are unchallenged).  This comports with

the notion that courts need not hunt through the record searching for a genuine issue of

material fact.  *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998);

*Savers Fed. Savs. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989).  Once the

movant has met its burden, the nonmovant may not rest upon allegations in the pleadings

and still survive summary judgment.  *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253,

261 (5th Cir. 2007).  The Court does not, "in the absence of any proof, assume that the

nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37

F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888

(1990).

## IV.  Discussion

Plaintiff's Motion rests upon the application of collateral estoppel[29] from the State

Court Case to establish nondischargeability under 11. U.S.C. §§ 523(a)(2)(A) and (a)(6)

as a result of Defendant's violation of the Texas Uniform Fraudulent Transfer Act

("TUFTA").[30]  When a plaintiff seeks to except a debt from a discharge granted to a

---

[29] Collateral estoppel and issue preclusion are the same concept, and both terms are used interchangeably.

[30] TUFTA may be found at Tex. Bus. Comm. Code § 24.001, et. seq.  Fraudulent transfer litigation is commonly brought using Tex. Bus. Comm. Code § 24.005, which states:

(a) A transfer made, or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalant value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due

debtor, the plaintiff must prove their claims by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). All exceptions to discharge under 11 U.S.C. § 523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio (Matter of Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). The Fifth Circuit, however, has ruled that there are limitations to this assumption, particularly in reference to the exceptions under 11 U.S.C. § 523 in which the debtor has allegedly committed fraud. *Tummel v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318-319 (5th Cir. 2005). Consequently, courts must balance a debtor's "fresh start" against protecting the victims of fraud. Under the standards enumerated, the Court finds genuine issues of material fact exist warranting trial on the merits and denial of the Motion.

### A.     Collateral Estoppel

Issue preclusion means that once "an issue of ultimate fact has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Simmons v. Bohana (In re Bohanna)*, Adv. No. 18-4065, 2019 WL 7580173 at *9 (Bankr. E.D. Tex. Nov. 15, 2019) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). In the context of bankruptcy dischargeability cases, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability."[31] *Simmons*, 2019 WL 7580173, at *9 (quoting *Raspanti v. Keaty (In re*

_____

[31] While *Brown v. Felsen* concerned res judicata, the Supreme Court noted that if a state court, "[i]n the course of adjudicating a state-law question," determines "factual issues using standards identical

9

*Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005)). "While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable." *Simmons*, 2019 WL 7580173, at *10 (citing *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991)).

Because Plaintiff has argued that issue preclusion applies from the state court final judgment, this Court is required to apply Texas law concerning issue preclusion. A party is precluded from raising an issue under Texas law when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Short v. Long (In re Long)*, Adv. No. 17-6007, 2019 WL 1556648, at *7 (Bankr. E.D. Tex. Apr. 9, 2019). Plaintiff argues that "the issues" considered by the Motion were "properly litigated" as found in the judgment. Plaintiff does not, however, present evidence that the issues raised by his 11 U.S.C. § 523 claims were "fully and fairly litigated" in the course of the State Court Case. There is insufficient information in the record as to whether any of the issues decided meet the standard of nondischargeability in a federal bankruptcy proceeding under 11 U.S.C. §§§ 523(a)(2) or (a)(6). *See e.g. Pancake v. Reliance Ins. Co. (Matter of Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997) (finding that record before court failed to demonstrate state court conducted hearing in which the defendant "received a full and fair adjudication on the issue of fraud."). The

---

to those of [§ 523], then collateral estoppel...would bar relitigation of those issues in the bankruptcy court." *Brown v. Felsen*, 442 U.S. 127, 139 n.10 (1979).

Fifth Circuit has previously stated that "the determination of whether a debt is nondischargeable under [§ 523] has been a matter of federal bankruptcy law, not state law." *Matter of Dennis*, 25 F.3d 274, 277 (5th Cir. 1994).  Furthermore, the Fifth Circuit has noted that it is only in "limited circumstances" that "bankruptcy courts [may] defer to the doctrine of collateral estoppel and thereby ignore Congress' mandate to provide plenary review of dischargeability issues." *Id.* at 278.  For collateral estoppel to apply in a bankruptcy court, the first court must have "made specific, subordinate, factual findings on the identical dischargeability issue in question–that is, an issue which encompasses the same *prima facie* elements as the bankruptcy issue–and the facts supporting the court's findings are discernable from that court's record." *Margolis v. Hensley (In re Hensley)*, 551 B.R. 792, 801 (E.D. Tex. 2015) (citing *Matter of Dennis*, 25 F.3d at 277-78)).  Neither of those requirements are present here.  There are insufficient "discernable" facts in the record presented by Plaintiff to indicate that the state court's final judgment contained "specific findings" on an identical dischargeability issue before both the state court and this Court, which include actual fraud, or willful and malicious injury.  *Id.*

Furthermore, the state court's final judgment order "does not appear to be premised on an analysis of any of the substantive [nondischargeability] issues in this case," but rather is based on a ruling that Defendant violated TUFTA and breached his contract with Plaintiff.  *See Turner-Foga v. GHK Enterprises, L.P. (In re Turner-Foga)*, Civ. No. SA-20-cv-0191-OLG, 2021 WL 3913587, at *2 (W.D. Tex. 2021).  Regarding

11

liability, the state court final judgment states that Defendant, GG, and FXBNT are "liable to Plaintiffs for violations of the Texas Uniform Fraudulent Transfer Act (TUFTA)" and that Defendant and GG "are liable to Plaintiffs for breach of contract."  Neither the judgment nor the evidence presented by Plaintiff shows that nondischargeability was fully and fairly litigated in the state court proceeding or that the elements of what was litigated were the same as the elements under § 523(a)(2)(A) and § 523(a)(6).  Thus, this Court cannot rely on collateral estoppel to resolve the nondischargeability issues as presented in the Motion.

### B.      11 U.S.C. § 523(a)(2)(A): Actual Fraud

Plaintiff contends that Defendant owes a debt which should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A) as a debt obtained by false pretenses, false representation, or actual fraud.  The Bankruptcy Code states:

> "A discharge under § 727 of this title does not discharge an individual debtor from any debt for money, property or services...to the extent obtained by false pretenses, false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial conditions."

11 U.S.C. § 523(a)(2)(A).  This subsection encompasses similar yet distinct causes of action.  The Fifth Circuit has distinguished the elements of "actual fraud" and "false pretenses and false representations."  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995), *overruled on other grounds as recognized by Husky v. Ritz (Matter of Ritz)*, 832 F.3d 560, 565 n.3 (5th Cir. 2016).  Plaintiff's Motion appears to seek summary judgment only under the actual fraud component of § 523(a)(2)(A) against Defendant,

and omits mention of the cause of action alleged for false pretenses or false

representations.[32]

The Fifth Circuit has stated that actual fraud under § 523(a)(2)(A) may be proven

by showing: (1) the debtor made a representation; (2) the debtor knew that the

representation was false at the time it was made; (3) the debtor made the representation

with the intent and purpose to deceive the creditor; (4) the creditor relied on the

representation; and (5) the creditor sustained a loss as the proximate result of its reliance

on the representation.  *Selenberg v. Bates (Matter of Selenberg)*, 856 F.3d 393, 398 (5th

Cir. 2017); *see also Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372

(5th Cir. 2005).  Despite these elements of actual fraud, the Supreme Court has ruled that

"[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent

conveyance schemes, that can be effected without a false representation."  *Husky Intern.*

*Electronics, Inc. v. Ritz*, 578 U.S. 356, 359 (2016).  Though it declined to adopt a

definition of actual fraud for all times and circumstances, the Supreme Court did state that

"'[a]ctual fraud' has two parts: actual and fraud."  *Id.* at 360.  For fraud to be actual,

---

[32] To obtain a judgment of nondischargeability for false representation or false pretenses, a creditor must demonstrate that a debtor made: (1) knowing and fraudulent falsehoods; (2) describing past or current facts; (3) that were relied upon by the other party.  *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 187 (Bankr. E.D. Tex. 2015) (citing *Allison v. Roberts (Matter of Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)).  False pretenses and false representations "both involve intentional conduct intended to create or foster a false impression."  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 389 (Bankr. E.D. Tex. 2009).  A false representation, however, "involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement."  *Wright*, 536 B.R. at 187.

plaintiffs must make a showing of wrongful intent on the part of the defendant.  *Id.*

Specifically, the Supreme Court described this idea as follows:

> The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1878).  "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid*.  Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

*Id*.  This intent can be inferred from circumstantial evidence.  *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287–88 (8th Cir. 1987) (abrogated on other grounds).  As with false pretenses or representations, reckless indifference to the truth can in some situations constitute a sufficient showing of wrongful intent to find actual fraud.  *In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994); *see also Farmers & Merchants State Bank v. Perry (In re Perry)*, 448 B.R. 219, 226 (Bankr. N.D. Ohio 2011) ("'[W]illful blindness' does not provide a defense to an action brought under § 523(a)(2)(A) and may instead be used as a factor indicative of fraud."); *see also Mid-South Maint., Inc. v. Burk (In re Burk)*, 583 B.R. 655, 667 (Bankr. N.D. Miss. 2018)("a debtor who recklessly disregards the truth has the requisite wrongful intent for his actions to constitute actual fraud.")

To satisfy the required element of creditor reliance, Plaintiff must prove both actual reliance and justifiable reliance which are determined by two different standards. Actual reliance is the equivalent of causation-in-fact, which is defined as a "substantial factor in determining the course of conduct that results in . . . loss." *AT & T Universal*

*Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001) (emphasis removed). This level of reliance "requires little of the creditor." *Id.* In the case of loan fraud, "an issuer usually will be able to establish actual reliance by showing it would not have approved the loan in the absence of debtor's promise." *Id.* at 411

Justifiable reliance, described as "an intermediate level of reliance," is a subjective standard that is more relaxed than the objective reasonable reliance standard. *Field v. Mans*, 516 U.S. 59, 74 (1995). Despite this, reasonableness is still a consideration because "the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact." *Id.* at 76. The promisee is not, however, required to investigate even if an investigation would reveal the falsity of the promisor's representation unless the falsity is "readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted." *In re Hurst*, 337 B.R. 125, 133-34 (Bankr. N.D. Tex. 2005).

Finally, the creditor must establish that its loss sustained is the "proximate result" or legal cause of the debtor's representation. *State of Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 967 (E.D. Tex. 1997). Proximate cause is "largely a question of foreseeability." *First Nat'l Bank of Omaha v. O'Brien (In re O'Brien)*, 555 B.R. 771, 782-783 (Bankr. D. Kan. 2016). Reliance on the debtor's representation is a proximate cause of the creditor's loss "if the evidence shows that the loss was a reasonably

15

foreseeable consequence of the plaintiff's reliance." *Am. Tobacco Co.*, 14 F. Supp. 2d at 967.

Plaintiff argues Defendant's debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because the state court final judgment holds that Defendant violated TUFTA by transferring fitness equipment from GG to FXBNT.[33]  Plaintiff further argues the state court final judgment meet the requirements to show Defendant effected a fraudulent transfer constituting "actual fraud" under § 523 (a)(2)(A).[34]  Defendant admits transferring some assets but states they were of "de minimis value" and that no transfer was made with fraudulent intent as to Plaintiff.[35]  Defendant further argues the state court judgment is ambiguous regarding which prong of TUFTA Defendant was found to have violated.[36]  This ambiguity, Defendant alleges, means the state could have found Defendant's TUFTA violation arose from a transfer that was constructively fraudulent, but not actually fraudulent.[37]  Plaintiff replies that Defendant misreads Tex. Bus. Comm. Code 24.005(a)(2) because both of GG's gyms ceased operating before the transfer.[38]

---

[33] Mot., ECF No. 17 at 8.

[34] *Id.*

[35] Obj., ECF No. 21 at 4-5 ¶¶ 7-10.

[36] Obj., ECF No. 21 at 3-4.

[37] *Id.*

[38] Rep., ECF No. 22 at 5.

16

After reviewing the final judgment, the Court finds it ambiguous regarding the type and nature of the violation found to have occurred.  This ambiguity makes it impossible to apply collateral estoppel as Plaintiff seeks, and because it is for this Court to determine issues of dischargeability, the Court finds summary judgment on Plaintiff's cause of action under 11 U.S.C. § 523(a)(2)(A) should be denied.

### C.     11 U.S.C. § 523(a)(6)

Debts arising "from willful and malicious injury by the debtor to another entity or the property of another entity" are nondischargeable in bankruptcy.  11 U.S.C. § 523(a)(6).  For an injury to be "willful," it must be "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  *Kawaauhu v. Geiger*, 523 U.S. 57, 61-62 (1998).  Thus, reckless or negligent conduct by a debtor leading to an injury is insufficient.  *Id.* at 64.  This means that § 523(a)(6) "applies to 'acts done with the actual intent to cause injury,' *but excludes intentional acts that cause injury*."  *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 508 (5th Cir. 2003) (emphasis added) (quoting *Kawaauhau*, 523 U.S. at 61).  Injuries covered by this exception are not limited to physical damage or destruction.  Harm to personal or property rights are also covered.  11 U.S.C. § 523(a)(6); *Cowin v. Countrywide Home Loans, Inc. (Matter of Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017).

The 11 U.S.C. § 523(a)(6) exception for willful and malicious injury by a debtor requires either: (1) objective substantial certainty of injury; or (2) subjective motive to

cause harm. *See Miller v. J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 606 (5th Cir. 1998). The objective standard is met when a court finds that a debtor intentionally took action(s) that necessarily caused, or were substantially certain to cause the injury. *Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006). Under the subjective test, a court must find that the debtor intended the actual injury that resulted. *Id*. The objective standard recognizes "the evidentiary reality that defendants rarely admit malicious intent." *Yu v. Lau (In re Lau)*, No. 11-40284, 2013 WL 2476359, at *7 (Bankr. E.D. Tex. May 28, 2013). Thus, a court must analyze from a reasonable person's perspective "whether the defendant's actions were substantially certain to cause harm, [and] are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Boyle v. Berkenbile (In re Berkenbile)*, No. 12-41969, 2014 WL 797743, at *9 (Bankr. E.D. Tex. Feb. 27, 2014) (citing *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009) (citing *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. App'x. 360, 361-62 (5th Cir. 2007)). "Substantial certainty does not mean absolute certainty, but it must be something more than a high probability." *In re Jones*, 655 B.R. 884, 894 (Bankr. S.D. Tex. 2023).

Plaintiff alleges Defendant intentionally transferred fitness equipment from GG to FXBNT, and in doing so that he converted the fitness equipment because there was no

bill of sale and FXBNT did not "pay any money" for the fitness equipment.[39]  According

to Plaintiff this transfer "denuded" GG of its assets creating a substantial certainty of

harm to Plaintiff's ability to collect the debt owed to him.[40]  Defendant denies that he

made any transfer to evade collection of the debt by Plaintiff.[41]  Instead, Defendant states

that fitness equipment transferred from GG for use in the gym owned by FXBNT was of

"de minimis value" and "fully depreciated."[42]

Under these concepts, Plaintiff has failed to make a sufficient showing to entitle

him to summary judgment.  A genuine issue of material fact exists as to whether

Defendant's actions were substantially certain to cause harm, as well as to the intent of

the Defendant, and so the Motion must be denied as to 11 U.S.C. § 523(a)(6).

## V.  Issues Precluded from Re-Litigation

For the previously mentioned reasons, Plaintiff's requested judgment in his favor

as a matter of law must be denied.  Nevertheless, certain facts have been established.  The

following facts are relevant to the issues before the Court and have been established in

this proceeding under the guidelines of Local District Court Rule CV-56, as incorporated

---

[39] Mot., ECF No. 17 at 9.

[40] *Id.*

[41] Obj., ECF No. 21 at 4-5 ¶ 8.

[42] Obj., ECF No. 21 at 5 ¶¶ 9-10.

by Local Rule of Bankruptcy Procedure 7056(d).[43]

1.   Plaintiff, Mustaali Carbaidwala resides in Illinois.

2.   Defendant, Patrick Gerleman resides in Frisco, Texas.

3.   FXB Dallas, LLC ("FXB") previously owned and operated two fitness gyms named "Farrell's Extreme Bodyshaping" in Frisco, Texas and Little Elm, Texas.

4.   FXB Dallas, LLC d/b/a Farell's Extreme Bodyshaping, as seller, and Gerleman Group, Inc. ("GG") as buyer executed an Asset Purchase Agreement (the "APA") dated November 7, 2019.

5.   The APA memorialized a transaction in which FXB would sell its fitness gyms to GG in return for payment of a $350,000.00 purchase price and assumption of existing lease obligations at both gym locations.

6.   The APA required GG to reimburse FXB for any amounts collected from FXB by a landlord should GG default on lease obligations.

7.   The APA required GG to pay FXB's attorney's fees, if any, resulting from GG's default on the APA.

8.   Plaintiff signed the APA for FXB, and Defendant signed for GG as its "Authorized Agent."

---

[43]   Local District Court Rule CV-56 directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence." It directs a respondent that any response "should be supported by appropriate citations to proper summary judgment evidence." With regard to the disposition of the motion, the rule states:

> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact.

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to support such a challenge by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the movant "admitted to exist without controversy." E.D. TEX. LOCAL R. CV–56(c).

9.      GG additionally executed a promissory note payable to Plaintiff in the
        amount of $200,000.00 (the "Note"), which Note was signed by Defendant
        as "President" of GG.

10.     The Note required GG to pay three payments on June 26, 2020, December
        26, 2020, and June 26, 2021."

11.     Defendant on November 26, 2019 executed a "Personal Guaranty of
        Payment" personally guaranteeing payment of the Note (the "Guaranty").

12.     GG failed to pay rent under the assumed leases in June, July, August, and
        September of 2020.

13.     GG failed to make scheduled payments under the Note.

14.     GG failed to cure its default under the Note after Plaintiff sent a cure
        demand.

15.     In July 2020, GG ceased operating the gym in Frisco purchased from FXB.

16.     In December 2020, GG ceased operating the gym in Little Elm purchased
        from FXB.

17.     Plaintiff and FXB commenced Case No. 471-06038-2020, styled *FXB
        Dallas, LLC., et. al. v. Gerleman Group, Inc. et. al.,* in the 471st Judicial
        District Court of Collin County, Texas (the "State Court Case").  In the
        State Court Case, Plaintiff and FXB sued Defendant, GG, and FXBNT for
        breach of the APA, Note, and Guaranty, and for fraudulent transfer of assets
        from GG to FXBNT.

18.     Plaintiff obtained a no answer default judgment against GG and FXBNT in
        the State Court Case.

19.     On September 20, 2021, Plaintiff and Defendant tried remaining contested
        claims in a bench trial in the State Court Case.  After trial, Plaintiff obtained
        a final judgment against Defendant in the State Court Case on September
        23, 2021 in the amount of $239,520.61 with post-judgment interest at a rate
        of 5%.  This final judgment amount was comprised of "economic damages
        in the sum of Two Hundred Six Thousand Five Hundred and 00/100 Dollars

($206,500.00), an additional sum of Twenty-Three Thousand Six Hundred
Twenty-Five and 86/100 Dollars ($23,625.86), plus reasonable and
necessary attorneys' fees in the sum of Eight Thousand Five Hundred
Thirty and 00/100 Dollars ($8,530.00), plus costs of court in the amount of
Eight Hundred Sixty-Four and 75/100 Dollars ($864.75)."

20.    The final judgment states that the liability basis for its award is as follows:

> "The Defendants are liable to Plaintiffs for violations of the Texas
> Uniform Fraudulent Transfer Act (TUFTA). In addition, Gerleman
> Group and Gerleman are liable to Plaintiffs for breach of contract."

21.    On December 30, 2022 Defendant filed his voluntary petition for Chapter 7
bankruptcy together with his original schedules and statements.

22.    On March 28, 2023 Plaintiff commenced this adversary proceeding.
Plaintiff's Original Complaint asserts causes of action seeking a finding that
the alleged debt owed Plaintiff is nondischargeable under 11 U.S.C.§
523(a)(2)(A) and § 523(a)(6).

23.    Defendant timely answered this proceeding.

24.    The Court set a discovery schedule and a deadline for summary judgment
motions in this proceeding.  Plaintiff timely filed a summary judgment
motion on January 19, 2024.  Defendant timely responded to Plaintiff's
summary judgment motion on February 26, 2024.

### VI.  Conclusion

Based upon the Court's consideration of the pleadings, the proper summary

judgment evidence submitted therewith, the relevant legal authorities, and for the reasons

set forth herein, the Court concludes that the "Motion for Summary Judgment" filed by

Plaintiff, Mustaali Carbaiwala is hereby **DENIED**.  Plaintiff failed to demonstrate he is

entitled to judgment as a matter of law regarding the dischargeability issues raised under

11 U.S.C. §§ 523(a)(2)(A) and (a)(6) in "Plaintiff's Original Complaint to Determine

Nondischargeability of Debt."[44]  Therefore, these claims must be determined through a trial on the merits.

Numerous factual issues, however, have been established through summary judgment evidence tendered to the Court.  Because the Court has not granted the relief sought by Plaintiff's Motion, it is appropriate to state the material facts that are not genuinely in dispute pursuant to Fed. R. Civ. P. 56(g).  These established facts as set forth in this Memorandum shall not be re-litigated at the trial for this adversary proceeding.  An appropriate order consistent with this opinion shall be entered by the Court.

Signed on 10/4/2024

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

---

[44] Compl., ECF No. 1.