**EOD**
07/25/2025

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| PATRICK CHARLES GERLEMAN | § | Case No. 22-41821 |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| MUSTAALI CARBAIDWALA | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 23-4022 |
| | § | |
| PATRICK CHARLES GERLEMAN | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court issues these findings of fact and conclusions of law after conducting trial in the above adversary proceeding. Plaintiff seeks to except from discharge an alleged debt of Patrick Charles Gerleman (the "Debtor" or "Defendant") arising from a state court judgment pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6). Defendant denies all of Plaintiff's allegations. Both parties appeared through counsel at trial.

These findings dispose of all remaining issues pending before the Court in the above adversary regarding Plaintiff's Original Complaint against Patrick Charles Gerleman pursuant to 11 U.S.C §§ 523(a)(2)(A and 523(a)(6). These findings and conclusions constitute the Court's findings of fact and conclusions of law and fact pursuant to Fed. R. Civ. P. 52, made applicable to adversary proceedings by Fed. R. Bankr. P. 7052. Where appropriate, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

1

# I.  Findings of Fact

*Previously Established Facts*

Certain facts were previously established in these adversary proceedings as set forth in the Court's prior "Memorandum of Decision"[1] under the guidelines of Local District Court Rule CV-56, as incorporated by Local Rule of Bankruptcy Procedure 7056(d).[2] Incorporated as part of these omnibus findings, the previously established facts are as follows:

1.  Plaintiff, Mustaali Carbaidwala resides in Illinois.

2.  Defendant, Patrick Gerleman resides in Frisco, Texas.

3.  FXB Dallas, LLC ("FXB") previously owned and operated two fitness gyms named "Farrell's Extreme Bodyshaping" in Frisco, Texas and Little Elm, Texas.

4.  FXB Dallas, LLC d/b/a Farell's Extreme Bodyshaping, as seller, and Gerleman Group, Inc. ("GG") as buyer executed an Asset Purchase Agreement (the "APA") dated November 7, 2019.

5.  The APA memorialized a transaction in which FXB would sell its fitness gyms to GG in return for payment of a $350,000.00 purchase price and assumption of existing lease obligations at both gym locations.

---

[1] ECF No. 23.

[2] Local District Court Rule CV-56 directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence." It directs a respondent to ensure that any response "should be supported by appropriate citations to proper summary judgment evidence." The rule states:

> (c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact.

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to support such a challenge by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the movant "admitted to exist without controversy." E.D. TEX. LOCAL R. CV–56(c).

6.    The APA required GG to reimburse FXB for any amounts collected from FXB by a landlord should GG default on lease obligations.

7.    The APA required GG to pay FXB's attorney's fees, if any, resulting from GG's default on the APA.

8.    Plaintiff signed the APA for FXB, and Defendant signed for GG as its "Authorized Agent."

9.    GG additionally executed a promissory note payable to Plaintiff in the amount of $200,000.00 (the "Note"), which Note was signed by Defendant as "President" of GG.

10.   The Note required GG to pay three payments on June 26, 2020, December 26, 2020, and June 26, 2021."

11.   Defendant on November 26, 2019 executed a "Personal Guaranty of Payment" personally guaranteeing payment of the Note (the "Guaranty").

12.   GG failed to pay rent under the assumed leases in June, July, August, and September of 2020.

13.   GG failed to make scheduled payments under the Note.

14.   GG failed to cure its default under the Note after Plaintiff sent a cure demand.

15.   In July 2020, GG ceased operating the gym in Frisco purchased from FXB.

16.   In December 2020, GG ceased operating the gym in Little Elm purchased from FXB.

17.   Plaintiff and FXB commenced Case No. 471-06038-2020, styled *FXB Dallas, LLC., et. al. v. Gerleman Group, Inc. et. al.,* in the 471st Judicial District Court of Collin County, Texas (the "State Court Case"). In the State Court Case, Plaintiff and FXB sued Defendant, GG, and FXBNT for breach of the APA, Note, and Guaranty, and for fraudulent transfer of assets from GG to FXBNT.

18.   Plaintiff obtained a no answer default judgment against GG and FXBNT in the State Court Case.

19.   On September 20, 2021, Plaintiff and Defendant tried remaining contested claims in a bench trial in the State Court Case. After trial, Plaintiff obtained a final judgment against Defendant in the State Court Case on September 23, 2021 in the amount of $239,520.61 with post-judgment interest at a rate of 5%. This final

3

judgment amount was comprised of "economic damages in the sum of Two Hundred Six Thousand Five Hundred and 00/100 Dollars ($206,500.00), an additional sum of Twenty-Three Thousand Six Hundred Twenty-Five and 86/100 Dollars ($23,625.86), plus reasonable and necessary attorneys' fees in the sum of Eight Thousand Five Hundred Thirty and 00/100 Dollars ($8,530.00), plus costs of court in the amount of Eight Hundred Sixty-Four and 75/100 Dollars ($864.75)."

20.   The final judgment states that the liability basis for its award is as follows:

> "The Defendants are liable to Plaintiffs for violations of the Texas Uniform Fraudulent Transfer Act (TUFTA). In addition, Gerleman Group and Gerleman are liable to Plaintiffs for breach of contract."

21.   On December 30, 2022 Defendant filed his voluntary petition for Chapter 7 bankruptcy together with his original schedules and statements.

22.   On March 28, 2023 Plaintiff commenced this adversary proceeding.  Plaintiff's Original Complaint asserts causes of action seeking a finding that the alleged debt owed Plaintiff is nondischargeable under 11 U.S.C.§ 523(a)(2)(A) and § 523(a)(6).

23.   Defendant timely answered this proceeding.

24.   The Court set a discovery schedule and a deadline for summary judgment motions in this proceeding.  Plaintiff timely filed a summary judgment motion on January 19, 2024.  Defendant timely responded to Plaintiff's summary judgment motion on February 26, 2024.

*Facts Established at Trial*

25.   The Court takes judicial notice of the docket in the underlying bankruptcy case.[3]

26.   Debtor filed a voluntary petition for Chapter 7 relief on December 30, 2022.[4]

27.   Debtor filed the petition with Schedules, Statements, and other required documents.[5]

---

[3] *In re Gerleman*, No. 22-41821.

[4] *In re Gerleman*, No. 22-41821, ECF No. 1.

[5] *Id.*

28.    Michelle Chow (the "Trustee") was assigned as the Chapter 7 Trustee on December 30, 2022.[6]

29.    The Trustee held and concluded the meeting of creditors on January 27, 2023.7

30.    The underlying bankruptcy was an asset case, but assets liquidated by the Trustee were relatively limited. [8]

31.    Debtor was granted a discharge under 11 U.S.C. § 727 on December 5, 2024.[9]

32.    The underlying bankruptcy case was closed on December 11, 2024.[10]

33.    On March 28, 2023, Plaintiff filed his Complaint initiating this adversary proceeding.[11]

34.    On April 28, 2023, Defendant answered.[12]

35.    The Court entered a Scheduling Order on June 13, 2023.[13]

36.    Plaintiff filed a summary judgment motion, to which Defendant objected.[14] him on October 4, 2024, the Court issued a written memorandum and order denying Plaintiff's summary judgment motion.[15]

---

[6] *In re Gerleman*, No. 22-41821, ECF No. 3.

[7] *In re Gerleman*, No. 22-41821.

[8] *In re Gerleman*, No. 22-41821, ECF Nos. 23 and 29.

[9] *In re Gerleman*, No. 22-41821, ECF No. 30.

[10] *In re Gerleman*, No. 22-41821, ECF No. 31.

[11] ECF No. 1.

[12] ECF No. 7.

[13] ECF No. 12.

[14] ECF Nos. 17 and 21.

[15] ECF Nos. 21 and 24.

37.    The Court entered a joint pretrial order on March 21, 2025.[16]

38.    In the "Joint Pre-Trial Order," the parties stipulated to the following additional facts:

    a.    On July 22, 2020, Plaintiff sent GG and Defendant correspondence demanding they pay plaintiff $70,166.67, the amount due under the Note as of June 26, 2020.

    b.    On October 7, 2020, Plaintiff sent GG and Defendant correspondence again demanding payment due under the Note and accelerating all remaining amounts owed, totaling $206,500.00 in both principal and interest.

39.    Trial was held on March 31, 2025. Plaintiff and Defendant both appeared. At the conclusion of trial, the Court took decision of this matter under advisement.

40.    At trial, Exhibits 1 through 39 were admitted.  Exhibits A through E were also admitted.

41.    The Court heard testimony from Plaintiff, Mustaali Carbaidwala.

42.    Plaintiff is originally from Illinois, and has a computer science degree from Illinois State University.  Plaintiff in the past has owned restaurants, a consulting business, and a property management business.

43.    Farrell's is a gym with multiple franchised locations operating under rules set by the Farrell's franchisor.

44.    Two Farrell's locations were opened and operated by Plaintiff through FXB.  One was in Little Elm, Texas and the second in Frisco, Texas.

45.    To obtain a Farrell's franchise, the prospective franchisee is required to meet in person with Lance Farrell.  Once approved, a franchise fee is required to be paid to Farrell's.  Once this fee is paid, the franchised gym location can be constructed and opened.

46.    The Little Elm location cost approximately $450,000.00 to open.  The Frisco location cost approximately $550,000.00 to open. The Frisco location was slightly

---

[16] ECF No. 33.

larger than the Little Elm location, and was in a standalone building rather than a strip center.

47.     These gyms earned money by selling memberships. To become a member of a Farrell's location, a patron was required to pay an upfront fee for 10 weeks of kickboxing and cardiovascular exercise classes. After conclusion of the 10 weeks, a patron could elect to continue to be a member and attend classes under a longer-term membership plan. Plaintiff testified that during the time FXB owned the two gyms, most patrons elected to become longer-term members.

48.     Each gym location contained an entry and kiosk, office, storage, bathrooms, and a large area for fitness classes. Equipment included kickboxing bags required by Farrell's, medicine balls, and exercise bands. Plaintiff testified these kickboxing bags cost approximately $300 each, that there were approximately 35 bags at each of the two locations, and that each bag is designed to last approximately 10 years.

49.     Plaintiff decided in 2019 that FXB should sell the gym locations because his son was born with Downs Syndrome and he wanted to spend more time with his family in Illinois as a result.

50.     The first step in the sales process was for Plaintiff to meet with Lance Farrell. Mr. Farrell suggested that Plaintiff meet with Defendant, who had expressed interest in acquiring a franchise location. Next, Plaintiff had a preliminary meeting with Defendant. Thereafter Plaintiff and Defendant negotiated a sale of both locations. The total sales price agreed upon was  $550,000.00, with $350,000.00 paid up front and the balance of $200,000.00 paid under the terms of a promissory note payable to Plaintiff. Plaintiff testified that after meeting Defendant, he did not have reservations about payment of the remaining balance of the purchase price through a promissory note.

51.     The transaction was memorialized in an Asset Purchase Agreement, with GG as the buyer. A complicating factor in the sale of the locations was the fact that both locations involved real estate leases. GG as buyer was required to assume these leases. The Little Elm locations landlord negotiated a new lease as part of the transaction. The Frisco landlord refused to remove Plaintiff from the existing lease. Though referenced as "Exhibit A" in the APA, no list of assets sold was included in the signed APA. The APA did not contemplate a security agreement nor UCC-1 financing statement.

52.     The sale transaction was completed and ownership of the two gyms was transferred from FXB to GG as contemplated by the APA.

53.  After completion of the sale, GG made no payments under the terms of the promissory note to Plaintiff.  Plaintiff later received a small distribution from Defendant's Chapter 7 Trustee.

54.  GG also stopped paying required lease payments Plaintiff received a demand letter from the Frisco landlord, and paid the landlord $17,000.00 in settlement of the landlord's claims against him.

55.  Plaintiff and FXB thereafter filed the State Court Case and obtained a default judgment against GG and FXBNT, a separate entity formed by Defendant, for breach of contract.  Plaintiff further obtained a judgment against Defendant, GG, and FXBNT for unspecified "violations of the Texas Uniform Fraudulent Transfer Act (TUFTA)."

56.  The Court also heard testimony from Defendant.

57.  At trial, Defendant worked for Service Experts Heating and Air Conditioning as a manager and business developer.  Prior to this he worked in sales for three years with "Alterverse."  Prior to working in sales, he owned the two Farrell's locations at issue in this adversary.

58.  Defendant has a business degree in accounting from the University of Texas at Dallas.

59.  Defendant was and is the manager and owner of GG, which was formed by him in August, 2019, to purchase and own the two Farrell's gym locations. In this capacity Defendant has authority over GG and makes financial decisions on its behalf.

60.  Defendant testified he has always been interested in physical fitness and that he wanted to be a business owner. These interests led him to Farrell's.

61.  Defendant was and is the owner and manager of FXBNT.  In this capacity Defendant has authority over FXNBT and makes financial decisions on its behalf.

62.  GG forfeited its corporate existence in August, 2024.

63.  Defendant signed the APA for GG, but never saw the list of assets referenced as "Exhibit A."  GG did receive some assets, but Defendant cannot specifically list them.  Defendant testified he understood the obligation to pay the promissory note payable to Plaintiff and intended to do so.

64.  Defendant obtained $200,000.00 of the upfront purchase price negotiated under the APA from his 401(k) retirement account. He also signed a personal guaranty.

65.  Defendant through GG started operating the gyms on January 1, 2020.  Plaintiff had trained Defendant to understand the gyms operations and the importance of memberships.  Furthermore, as part of the ownership transition of the gyms, Defendant was provided with a large amount of documentation and was introduced to some of the patrons at the Little Elm location.  At some point, GG purchased two body measurement machines for which together cost approximately $20,000.00.

66.  Shortly thereafter, the Covid-19 pandemic began. Both gym locations were required to be closed by Executive Order GA-08 signed by Gov. Greg Abbott on March 19, 2020.  They were closed for approximately two months, and were then allowed to partially reopen.  The pandemic significantly affected the operation and viability of the purchased gyms. Defendant stated memberships declined during this time, but could not provide specifics.

67.  Defendant through GG attempted to mitigate the effects of the pandemic including limited experimentation with virtual classes and discounted membership plans. These efforts had limited success.

68.  The first payment under the promissory note payable to Plaintiff came due in June, 2020 in the amount of $70,166.67.  GG stopped making lease payments in June, 2020.  GG had insufficient funds to make these payments.

69.  The Frisco gym closed in July, 2020.  At the time it was suffering A/C problems which, according to Defendant, the landlord had failed to remedy.

70.  FXBNT was formed on August 5, 2020 by Defendant after receipt of demand letters from Plaintiff.  The reasons given for this by Defendant were (A) that GG as a corporation was subject to different requirements than FXBNT as an LLC; (B) that he felt the Little Elm gym needed to move to a better location due to mold and water issues in the building where it was located; (C) for FXBNT to enter into the lease for the new location for the Little Elm gym; and (D) because the "credit" of GG was not good, possibly affecting its ability to obtain the desired lease.

71.  Defendant denied concealing these facts, and admitted that some equipment was moved from the old Little Elm gym to its new location.  Some equipment also came from the now closed Frisco location.  The equipment moved included approximately 30 kickboxing bags, medicine balls, merchandise, strength training

9

bands, cleaning equipment, and one of the two body measurement machines. The other body measurement machine was sold.

72. The change in location of the Little Elm gym was approved by Farrell's under its franchise requirements without necessity of paying another franchise fee.

73. The old Little Elm gym closed in December, 2020. The new location for the Little Elm gym opened in January, 2021. Though the new location was owned and leased by FXBNT, construction costs were paid by GG.

74. Defendant testified he did not cause GG to pay him for his work at the gym locations with any regularity.

75. FXBNT utilized a bank account opened at Wells Fargo. GG utilized a bank account opened at Chase.

76. It is unclear how many members from either the old Little Elm or Frisco gym locations transferred memberships to the new Little Elm gym location.

77. The new Little Elm gym location was not successful. Because of failure to pay lease payments, much of the contents of the new gym location were seized by the landlord.

78. This concludes the Court's findings of fact.

## II.  Conclusions of Law

1. The Court has jurisdiction to consider the adversary complaint in this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This Court has authority to enter a final judgment on all issues raised in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (I), and (J) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

3. All exceptions to discharge under 11 U.S.C. § 523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 619 (5th Cir. 2011) (citing *Hudson v. Raggio & Raggio, Inc.* (*In re Hudson*), 107 F.3d 355, 356 (5th Cir. 1997)); *Lawrence v. Frost Bank (In re Lawrence)*, No. 21-10103, 2022 U.S. App. LEXIS 886, 2022 WL 118966, at *1 (5th Cir. Jan. 12, 2022). The Fifth Circuit, however, has ruled that there are limits to this

assumption, particularly in reference to the exceptions under 11 U.S.C. § 523 in which the debtor has allegedly committed fraud. *Tummel v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318-319 (5th Cir. 2005). Consequently, courts must balance a debtor's "fresh start" against protecting the victims of fraud. *Id.* at 319.

4. A preponderance of the evidence standard applies to the determination of the dischargeability of a particular debt under section 523. *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991).

5. The Bankruptcy "Code limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor." *Id.* at 286-87.

### 11 U.S.C. § 523(a)(2)(A)

6. 11 U.S.C. § 523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, ... to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

7. Section 523(a)(2)(A) encompasses similar but distinct causes of action. The Fifth Circuit has distinguished the elements of "actual fraud" from those involving "false pretenses and false representations." *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291 (5th Cir. 1995) (overruled on other grounds by *Husky Intern. Electronics, Inc. v. Ritz*, 136 S.Ct. 1581 (2016)).[17] The Supreme Court also views

---

[17] The effect of *Husky* can be explained as follows:

On May 16, 2016, the United States Supreme Court issued *Husky Int'l Electronics, Inc. v. Ritz*, [578] U.S. [355], 136 S.Ct. 1581, 194 L. Ed. 2d 655 (2016) in which it clarified the standards for actual fraud. In *Husky*, the debtor transferred large sums of Chrysalis Manufacturing Corporation's money to other entities he controlled. A creditor of Chrysalis Manufacturing Corporation argued that these inter-company transfers constituted actual fraud under § 523(a)(2)(A). The Supreme Court agreed and held that actual fraud under § 523(a)(2)(A), "encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky*, 136 S.Ct. at 1586. "To the extent that *In re Acosta*, *RecoverEdge*, and other prior Fifth Circuit cases required that a debtor make a representation in order for a debt to be nondischargeable under § 523(a)(2)(A), those cases are effectively overruled by the Supreme Court's decision in this case. *Husky*, 136 S.Ct. at 1586."

*In re Pellerin*, Nos. 1100857EE, 1100121EE, 2017 Bankr. LEXIS 655, at *23-24 (Bankr. S.D. Miss. 2017).

these as distinct causes of action. *Husky*, 578 U.S. at 355 (stating Congress "did not intend 'actual fraud' to mean the same thing as 'false representations.'"); see also *Choi v. Tan*, No. 4:24-CV-342, 2025 U.S. Dist. LEXIS 58243, at *14 (E.D. Tex. 2025).

8.  The distinction as recognized by the Fifth Circuit appears to be a chronological one, resting upon whether a debtor's representation is made with reference to a future event as opposed to a representation regarding a past or existing fact. *Bank of Louisiana v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991) (overruled on other grounds by *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 355 (2016))[18] ["In order . . . to be a false representation or false pretense under 523(a)(2), the false representations and false pretenses [must] encompass statements that falsely purport to depict current or past facts. [A debtor's] promise ... related to [a] future action [which does] not purport to depict current or past fact . . . therefore cannot be defined as a false representation or a false pretense"].

9.  This means that "[a] debtor's representation related to a future action does not satisfy § 523(a)(2)(A) for a false pretense or false representation unless, at the time the representation was made, the creditor can establish that the debtor had no intention of fulfilling the promise or representation." *In re Rosenburg*, No. 20-40753-MXM-7, 2022 WL 4085886, at *3 (Bankr. N.D. Tex. Sept. 6, 2022).

10.  Plaintiff seeks to have the judgment debt owed him by Defendant excepted from discharge pursuant to the "false pretenses" or "false representation" provision in § 523(a)(2)(A), and under the "actual fraud" provision in § 523(a)(2)(A).

11.  Defendant contests Plaintiff's allegations.

12.  However, the Court must first consider whether a debt even exists that may be held nondischargeable. *Simmons v. Simmons (In re Simmons)*, Nos. 23-10130, 24-1006, 2025 Bankr. LEXIS 1382, at *21 (Bankr. E.D. Tex. 2025).

---

[18] As another bankruptcy court explained:

*Husky* made clear that no misrepresentation is necessary to establish an "actual fraud" under § 523(a)(2)(A) of the Bankruptcy Code. Courts in the Fifth Circuit continue to follow *Bercier's* requirement that a "false representation" under § 523(a)(2)(A) must relate to past or current facts. See, *e.g., In re Carter*, No. 17-35082, 2018 WL 6060391, at *23 (Bankr. S.D. Tex. Nov. 19, 2018); *In re Martin*, No. 15-41103, 2017 WL 1316928, at *10 (Bankr. E.D. Tex. Apr. 7, 2017).

13.  "A bankruptcy court cannot declare a debt nondischargeable until the creditor establishes the existence and amount of that debt." *In re Avery*, 594 B.R. 655, 661 (Bankr. S.D. Miss. 2018); *see also In re Burg*, 641 B.R. 120, 131 (Bankr. S.D. Tex. 2022).  As the Court in *Burg* explained, "debt" is a defined term meaning "liability on a claim" and "claim" is a defined term meaning a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . ." *In re Burg*, 641 B.R. at 131; 11 U.S.C. §§ 101(12) and 101(5).

14.  The Court finds Plaintiff has established that a debt exists which is owed to him by Defendant.  This debt is comprised of the judgment debt owed to Plaintiff by Defendant.

*False Pretenses and False Representation*

15.  While "false pretenses" and "false representation" both involve intentional conduct intended to create and foster a false impression, the distinction is that a false representation involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement.  *See Walker v. Davis (In re Davis)*, 377 B.R. 827, 834 (Bankr. E.D. Tex. 2007); *Haney v. Copeland (In re Copeland)*, 291 B.R. 740, 760 (Bankr. E.D. Tenn. 2003); *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 389 (Bankr. E.D. Tex. 2009).

16.  To succeed under § 523(a)(2)(A), the creditor must prove an intent to deceive. *Friendly Fin. Service - Eastgate v. Dorsey* (*In re Dorsey*), 505 F.3d 395, 399 (5th Cir. 2007).

17.  "To obtain a judgment that a debt is nondischargeable for false representations, the misrepresentations must have been: (1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Jacobson v. Ormsby (In re Jacobson),* No. 06-51460, 2007 WL 2141961, at *2 (5th Cir. July 26, 2007); *In re Rifai*, 604 B.R. 277, 308 (Bankr. S.D. Tex. 2019).

18.  "To obtain a judgment that a debt is nondischargeable for false pretenses, the creditor must show that: (1) the debtor engaged in conduct 'wronging one in his property rights by dishonest methods or schemes [such as] deprivation of something of value by trick, deceit, chicane[ry] or overreaching;' (2) there was scienter or intent; (3) causation; and (4) damages."  *In re Rifai*, 604 B.R. 277, 312

(Bankr. S.D. Tex. 2019) (quoting *Novartis Corp. v. Luppino (In re Luppino)*, 221 B.R. 693, 701-02 (Bankr. S.D.N.Y. 1998)).

19. "When deciding whether a creditor has satisfied the 'intent' prong of a 'false pretenses' dischargeability exception, the bankruptcy court must consider whether the circumstances, as viewed in the aggregate, present a picture of deceptive conduct by the debtor, indicating an intent to deceive his creditor." *In re Hurst*, 337 B.R. 125, 133 (Bankr. N.D. Tex. 2005).

20. "Intent to deceive is present if a debtor intends or has reason to expect a creditor to act, or to refrain from action, in reliance upon the debtor's misrepresentation; a result is intended if a debtor either acts with desire to cause it or acts believing that there is a substantial certainty that the result will follow from his conduct." *Id.*

21. A court may infer the requisite intent from a "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005); *see also In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994) (considering the totality of the circumstances to determine the debtor's intent).

22. Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that Defendant, Patrick Charles Gerleman, made a misrepresentation to Plaintiff which was a knowing and fraudulent falsehood.

23. Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that Defendant, Patrick Charles Gerleman, made a misrepresentation to Plaintiff which described past or current facts.

24. Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that Defendant, Patrick Charles Gerleman, made a misrepresentation to Plaintiff upon which Plaintiff relied.

25. Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that Defendant, Patrick Charles Gerleman, had the requisite intent to deceive Plaintiff.

26. Plaintiff, Mustaali Carbaidwala, has therefore failed to demonstrate by a preponderance of the evidence that the judgment debt owed him by Defendant, Patrick Charles Gerleman, arose from false representations or false pretenses as contemplated by § 523(a)(2)(A).

*Actual Fraud*

27.   To have a debt excepted from discharge pursuant to the "actual fraud" provision in
§ 523(a)(2)(A), an objecting creditor must prove that (1) the debtor made
representations; (2) at the time they were made the debtor knew they were false;
(3) the debtor made the representations with the intention and purpose to deceive
the creditor; (4) the creditor justifiably relied on such representation; and (5) the
creditor sustained losses as a proximate result of the representations. *Selenberg v.
Bates (Matter of Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017); *see also Gen.
Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005).

28.   Despite these elements of actual fraud, the Supreme Court has ruled that "[t]he
term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent
conveyance schemes, that can be effected without a false representation." *Husky
Intern. Electronics, Inc. v. Ritz*, 578 U.S. 356, 359 (2016).  Though it declined to
adopt a definition of actual fraud for all times and circumstances, the Supreme
Court did state that "'[a]ctual fraud' has two parts: actual and fraud." *Id.* at 360.
For fraud to be actual, plaintiffs must make a showing of wrongful intent on the
part of the defendant. *Id.*  Specifically, the Supreme Court described this idea as
follows:

> The word "actual" has a simple meaning in the context of common-
> law fraud: It denotes any fraud that "involv[es] moral turpitude or
> intentional wrong." *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586
> (1878).  "Actual" fraud stands in contrast to "implied" fraud or fraud
> "in law," which describe acts of deception that "may exist without the
> imputation of bad faith or immorality." *Ibid.*  Thus, anything that
> counts as "fraud" and is done with wrongful intent is "actual fraud."
> *Id.*

29.   This intent can be inferred from circumstantial evidence. *Caspers v. Van Horne
(In re Van Horne)*, 823 F.2d 1285, 1287–88 (8th Cir. 1987) (abrogated on other
grounds).  As with false pretenses or representations, reckless indifference to the
truth can in some situations constitute a sufficient showing of wrongful intent to
find actual fraud. *In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994); *see also
Farmers & Merchants State Bank v. Perry (In re Perry)*, 448 B.R. 219, 226
(Bankr. N.D. Ohio 2011) ("'[W]illful blindness' does not provide a defense to an
action brought under § 523(a)(2)(A) and may instead be used as a factor indicative
of fraud."); *see also Mid-South Maint., Inc. v. Burk (In re Burk)*, 583 B.R. 655,

667 (Bankr. N.D. Miss. 2018)("a debtor who recklessly disregards the truth has the requisite wrongful intent for his actions to constitute actual fraud.")

30.  To satisfy the required element of creditor reliance, Plaintiff must prove both actual reliance and justifiable reliance which are determined by two different standards.  Actual reliance is the equivalent of causation-in-fact, which is defined as a substantial factor in determining the course of conduct that results in . . . loss." *AT & T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001) (emphasis removed).  This level of reliance "requires little of the creditor." *Id.*  In the case of loan fraud, "an issuer usually will be able to establish actual reliance by showing it would not have approved the loan in the absence of debtor's promise."  *Id.* at 411.

31.  Justifiable reliance, described as "an intermediate level of reliance," is a subjective standard that is more relaxed than the objective reasonable reliance standard. *Field v. Mans*, 516 U.S. 59, 74 (1995).  Despite this, reasonableness is still a consideration because "the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact." *Id.* at 76.  The promisee is not, however, required to investigate even if an investigation would reveal the falsity of the promisor's representation unless the falsity is "readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted." *In re Hurst*, 337 B.R. 125, 133-34 (Bankr. N.D. Tex. 2005).

32.  Finally, the creditor must establish that its loss sustained is the "proximate result" or legal cause of the debtor's representation. *State of Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 967 (E.D. Tex. 1997).  Proximate cause is "largely a question of foreseeability." *First Nat'l Bank of Omaha v. O'Brien (In re O'Brien)*, 555 B.R. 771, 782-783 (Bankr. D. Kan. 2016).  Reliance on the debtor's representation is a proximate cause of the creditor's loss "if the evidence shows that the loss was a reasonably foreseeable consequence of the plaintiff's reliance." *Am. Tobacco Co.*, 14 F. Supp. 2d at 967.

33.  Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that Defendant, Patrick Charles Gerleman, made representations.

34.  Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that Defendant, Patrick Charles Gerleman, knew those representations, if any, were false when he made them.

35.   Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that Defendant, Patrick Charles Gerleman, made representations, if any, with the requisite intent to deceive Plaintiff.

36.   Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that Defendant, Patrick Charles Gerleman, caused Plaintiff to justifiably rely on his representations, if any.

37.   Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that Defendant, Patrick Charles Gerleman, caused Plaintiff to sustain a loss as the proximate result of his representations, if any.

38.   Thus, Plaintiff, Mustaali Carbaidwala, has failed to sustain his burden of proof that the judgment debt owed to him by Defendant/Debtor, Patrick Charles Gerleman, arose from actual fraud as contemplated by § 523(a)(2)(A).

### 11 U.S.C. § 523(a)(6)

39.   11 U.S.C. § 523(a)(6) of the Bankruptcy Code provides that:

> a discharge under §727 of this title does not discharge an individual debtor from any debt for money, property, or services, . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

40.   The United States Supreme Court has offered its opinion as to what types of debts Congress intended to except from discharge pursuant to § 523(a)(6).   In *Kawaauhau v. Geiger*, the Supreme Court stated that:

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, Comment *a*, p. 15 (1964) (emphasis added).

17

*Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S. Ct. 974, 977, 140 L. Ed. 2d 90 (1998).

41.   The Supreme Court concluded that negligent or reckless acts are not sufficient to establish that a resulting injury is "willful and malicious" and that, therefore, "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Geiger*, 523 U.S. at 58.

42.   The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.  *Id.*

43.   In *Miller v. J. D. Abrams, Inc. (In re Miller)*, the Fifth Circuit analyzed the *Geiger* ruling to articulate a methodology by which to distinguish between acts intended to cause injury as opposed to those merely leading to injury.  156 F.3d 598 (5th Cir. 1998).   The *Miller* court determined that a "willful . . . injury" is established under § 523(a)(6) when there exists either: (1) an objective substantial certainty of harm arising from a deliberate action or (2) there is a subjective motive to cause harm by the party taking a deliberate or intentional action.   *Id.* at 604-06.  It further determined that the standard for determining the existence of a "willful" injury under *Geiger* had subsumed the Circuit's former standard for determining "malicious" conduct under § 523(a)(6) [i.e. "without just cause or excuse"] and had eliminated any need to conduct a separate analysis on that malice element. *Id*.  The "objective substantial certainty" prong is a recognition of the evidentiary reality that a defendant in a bankruptcy context rarely admits any prior action was taken with the intent to cause harm to anyone.   *Id.*

44.   The objective standard is met when a court finds that a debtor intentionally took action(s) that necessarily caused or were substantially certain to cause the injury. *Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006).   Under the subjective test, a court must find that the debtor intended the actual injury that resulted.   *Id*.   The objective standard recognizes "the evidentiary reality that defendants rarely admit malicious intent." *Yu v. Lau (In re Lau)*, No. 11-40284, 2013 WL 2476359, at *7 (Bankr. E.D. Tex. May 28, 2013).

45.   "A court is thus expected to analyze whether the defendant's actions, which from a reasonable person's standpoint were substantially certain to result in harm, are such that the court ought to infer that the debtor's *subjective* intent was to inflict a willful and malicious injury on the plaintiff." *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009),

18

citing *Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x. 360, 362 (5th Cir. 2007).

46.    "Substantial certainty does not mean absolute certainty, but it must be something more than a high probability." *In re Jones*, 655 B.R. 884, 894 (Bankr. S.D. Tex. 2023).

47.    Determining the existence of objective intent is necessarily a fact intensive exercise. *In re Smith*, 659 B.R. 500, 508 (Bankr. E.D. Tex. 2024).

48.    "Injuries covered by § 523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by § 523(a)(6)." *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 698-99 (Bankr. E.D. Tex. 2009). This means that § 523(a)(6) "applies to 'acts done with the actual intent to cause injury,' *but excludes intentional acts that cause injury*." *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 508 (5th Cir. 2003) (emphasis added) (quoting *Kawaauhau*, 523 U.S. at 61).

49.    It is legally insufficient for purposes of § 523(a)(6) for Plaintiff to demonstrate that Defendant took intentional actions which resulted in an injury to Plaintiff.

50.    Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence the existence of a deliberate or intentional injury inflicted upon him by Defendant, Patrick Charles Gerleman.

51.    Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that the Defendant, Patrick Charles Gerleman's actions created an objective substantial certainty of harm to Plaintiff.

52.    Plaintiff, Mustaali Carbaidwala, has failed to demonstrate by a preponderance of the evidence that the Defendant, Patrick Charles Gerleman's actions in created a subjective substantial certainty of harm to Plaintiff.

53.    Thus, Plaintiff, Mustaali Carbaidwala, has failed to sustain his burden of proof that any portion of the indebtedness owed to him by Defendant, Patrick Charles Gerleman, arose from the infliction of a "willful and malicious injury" as contemplated by § 523(a)(6).

### III.  Conclusion

1.      Because the Court concludes that Plaintiff, Mustaali Carbaidwala, has not proven
by a preponderance of the evidence that the judgment debt owed him by
Defendant, Patrick Charles Gerleman, was obtained by false pretenses or by a
false representation of Defendant, judgment must be rendered for Defendant under
the false pretenses or false representation components of 11 U.S.C. § 523(a)(2)(A).

2.      Because the Court concludes that Plaintiff, Mustaali Carbaidwala, has not proven
by a preponderance of the evidence that the judgment debt owed him by
Defendant, Patrick Charles Gerleman, was obtained by actual fraud, judgment
must be rendered for the Defendant under the actual component of 11 U.S.C. §
523(a)(2)(A).

3.      Because the Court concludes that Plaintiff, Mustaali Carbaidwala, has failed to
prove by a preponderance of the evidence that the judgment debt owed him by
Defendant, Patrick Charles Gerleman, arose from a willful and malicious injury
inflicted upon him by Defendant, judgment must be rendered for the Defendant
under 11 U.S.C. § 523(a)(6).

4.      An appropriate judgment shall be entered consistent with these findings and
conclusions.

Signed on 7/25/2025

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE